So we'll begin first with A.R. v. Connecticut State Board. Morning, Your Honor. Can you hear me? Yes. Thank you. Your Honor's counsel may please the court. For over 40 years and with full knowledge and acquiescence of the U.S. Department of Education, the state of Connecticut has terminated special education services for non-graduating special education students at the end of the school year in which they turn 21. In granting summary judgment for the plaintiff class, the district court erred in several respects. First, the most significant error made by the court was its conclusion that Connecticut had committed a gross violation of the IDEA justifying an award of compensatory education for the entire class. Second, it was error to conclude that by providing high school completion services to all Connecticut residents over the age of 21, Connecticut was compelled under the IDEA to provide non-graduating special education students with services until age 22. Third, because the IDEA was passed pursuant to Congress's spending powers under the Arlington Central School case and its progeny, if the term public education is ambiguous,  Fourth, the original plaintiff D.J. was granted a regular high school diploma before the case was filed and therefore lacked standing to bring this case. I would like first to address the district court's awarding of compensatory education. Even if the district court was correct by providing adult education services, Connecticut was obligated under the IDEA to provide special education services. It was an abuse of discretion to order compensatory education for the plaintiff class. This court and others have made clear that under the IDEA, a disabled child does not have a right to demand a public education beyond the age of 21. This court, however, allows for compensatory education for a child over 21 years where there has been a gross violation of the IDEA. The district court essentially held that Connecticut law itself was a gross violation. However, a gross violation cannot be based on a court-determined definition of the term public education when the federal judiciary itself has significant disagreements as to the IDEA requirements and whether public education encompasses the provision of adult education. So far, at least three federal judges, including one circuit judge, have interpreted the IDEA as Connecticut advocates in this case. Also, the Seventh and arguably the Ninth Circuits have held that the IDEA language itself only requires the provision of services until age 21. As we note in our brief at page 43, Judge Cabranes wrote in the Mangio case in the context of qualified immunity that liability should not attach where not only officers of reasonable competence, but federal judges could so disagree. And for good measure, Judge Bianco was the trial judge who was affirmed in Mangio. And just as qualified immunity should apply in such a situation, it would be unfair to subject Connecticut to liability in the form of compensatory education given the disagreement among federal judges. Additionally, the U.S. Department of Education, the agency tasked with implementing and monitoring the IDEA has repeatedly approved Connecticut's IDEA Part B plans. And these plans contain a description of when Connecticut exits special education students. And finally, in the Arlington Central Schools case cited in our brief, the Supreme Court made clear that in spending clause legislation, such as the IDEA, the conditions for acceptance of federal funds must be set out unambiguously. The Supreme Court explained that states cannot knowingly accept conditions of which they were unaware or which they are unable to ascertain. To the extent disagreement among federal judges and states on this point demonstrates that the undefined term public education is ambiguous, as was the case in Arlington, it would be unfair to subject Connecticut to retroactive liability. Second, public education as used in the IDEA does not mean the adult education programs offered in Connecticut. The obligation to provide a free appropriate public education to disabled children ages 18 through 21 applies only if it does not conflict with state law or practice respecting the provision of public education to children aged 18 through 21. The term public education is undefined in the IDEA. The district court held that the term public education included the adult education programs offered in Connecticut and this was clear error. As explained in our brief, adult education programs in Connecticut are effectively high school completion programs, far less comprehensive than the programming offered in Connecticut and guaranteed by the Connecticut constitution. The only high school completion program available to all Connecticut residents is the GED. And that is really just a test preparation program. Back, the IDEA regulations specifically provide that the GED does not count as a regular high school diploma. Additionally, the IDEA itself classifies adult education, not as public education, but as a post school activity. Public education in Connecticut is, as is the case in most states, an affirmative state constitutional right implemented by the elected branches of government. Public education in Connecticut is the highly regulated education provided in our public schools. As we outlined in our brief, the education provided in Connecticut's public schools contains numerous mandates and requirements that are simply not found in adult education. The district court erred in not utilizing Connecticut law on this point. As Justice Sotomayor wrote in the Taylor case, while still a member of this court, the IDEA does not usurp the state's traditional role in setting educational policy. According to Justice Sotomayor's opinion for the panel, the IDEA represents cooperative federalism and allows some substantive differentiation among the states. Also, this court's analysis in the St. Johnsbury Academy case is instructive. There, the court analyzed New York's special education age-out provision, and in doing so, did not feel the need to look into whether New York has also provided adult education. Third, the original plaintiff, D.J., lacks standing, and the complaint could therefore not be amended. The district court also erred in permitting the complaint to be amended to substitute in AR. D.J., the original plaintiff, alleged in his complaint that he did not have a diploma. The record later revealed that he did have a diploma before the complaint was filed. D.J.'s transcripts also demonstrate that he earned the requisite credits to graduate. In the 30B6 deposition of Hartford Special Education Director, established that Hartford only issues one type of diploma. A student who has graduated with a diploma is not eligible for further educational services under federal or state law. Thus, D.J. lacks standing before the case was filed. This is significant because under this court's Holding and Disability Advocates case, because D.J. lacks standing at the time his complaint was filed, the complaint could not be amended to allow substitution of AR. The Supreme Court, in the Clapper case, has made clear that the party-invoking federal jurisdiction bears the burden of establishing standing. The plaintiff failed to carry this burden. Fourth, Connecticut could not have known that in providing adult education services, it would upend longstanding state law. While a member of this court, Justice Sotomayor, wrote that neither the IDEA nor its federal regulatory schemes are models of clarity. This quote is borne out of the many cases discussed in our brief, which show the various courts that have reached different conclusions about the statutory language in this case. Excuse me, you have a minute left. Thank you. To put a finer point on it, if the term public education is given the meaning that the district court found, this was news to Connecticut, which for over 40 years has had an earlier termination date. Under well-established Supreme Court precedent, namely the Arlington Central Schools case, which itself was an IDEA case and also happened to involve Judge Hayes, spending clause legislation such as the IDEA must be unambiguous. Connecticut cannot knowingly accept conditions of which they are unaware or which they are unable to ascertain. This court must view the IDEA from the perspective of a state official who is engaged in the process of deciding whether Connecticut should accept IDEA funds and the obligations that go with those funds. The record here demonstrates that for over 40 years, Connecticut did not believe that its procedure for special education violated the IDEA as found by the district court. Accordingly, this court should reverse the granting of summary judgment for AR and grant summary judgment for Connecticut. Alternatively, if this court should affirm the granting of summary judgment, it should nonetheless reverse the award of compensatory education because Connecticut's statutory scheme in place for over 40 years is not a gross violation of the IDEA. Thank you, Your Honor. I believe my eight minutes is up and pursuant to the procedure, I can take questions. Yes, indeed. Judge Kearse? No questions. Judge Bianco. Thank you, Judge Cabranes. Mr. Cunningham, on the issue of standing, isn't it on page 206 of the record that there's an affidavit from CJ's parent that they did not accept the diploma and that he continued to receive services until he aged out and Dr. Sellers that he had not obtained skills commensurate with a typical high school graduate. So if he doesn't accept the diploma, continues to receive services, why doesn't he have standing? So because, Your Honor, under state law, the district was not obligated anymore under state or federal law to provide him with services because he had, in fact, qualified for a diploma. The record shows that he had 24 credits, which is the state law for a diploma. The fact that he just didn't accept it. Wouldn't that allow a state then to just issue a diploma and deprive the plaintiff of the ability to say my services were insufficient? So the point of the IDEA is to say, I didn't get the services I'm entitled to. The school could just issue a diploma and that person would have no standing. So my response to that is that there are methods for him under state and federal law to challenge his diploma as he sort of sought to do during the discovery. It was the first anyone had heard of it. And I understand the point he's trying to make. What I can say is this, first of all, states could not do, I think, what you suggest because there are procedures in place that allow a student to challenge the education that he received. He didn't do that in this case. He sort of alleged it after the standing issue was raised. But what we do know from the record and from the testimony of the special education director is that Hartford only issues one type of diploma. He qualified for that diploma. He earned the requisite credits under state law. And he was in fact a graduate before the case was filed. All right, let me ask you about the merits. So you're urging us to allow each state to set their own definition of public education. Isn't that problematic? Shouldn't there be one definition under the IDEA? My second part of that question is why shouldn't we use the definition of the Ninth Circuit, the First Circuit and the district court use, which is essentially to say if the objective, obviously has to be public funding but under supervision of the state, but the key part would be that the objective of the particular program would be to educate the student up to the level of academic proficiency associated with the completion of secondary school. Why shouldn't that be the definition? So I think the definition is too broad and I think it encompasses basically anything. And I think that that's really clear. If you had, for example, transition services or vocational services, that would be for adults, that would be different. But if the goal of the program is to get them to the level of the completion of secondary school, that's right in the heartland of the statute, right? So I would say this. I would say the IDEA when it was passed in 1975 was really about students accessing both their own neighborhood and public schools and also being in classrooms with their non-disabled peers to the maximum extent possible. And what you have in this case, Connecticut, the only statewide adult education program is the GED. And as the record makes clear, that's essentially the only kind of education given by the state or under the state direction is test preparation services. It's just not nearly as comprehensive as public education. And to your point about allowing or not having a sort of national standard, I actually think that as the language I quoted and also the IDEA itself sets out, there are going to be differences among the states. And even this provision allows for the differences among states. It just says that you can't differentiate special education students from regular education students. And I will say that in the Ninth Circuit case, the adult education programs in that case were not open to special education students. And in Connecticut, the GED, everything else, everyone is eligible to partake in that. My last question is on the gross violation issue. And I understand what you're saying with respect to the DOE and the lack of a definition, but can't you interpret gross violation meaning that substantively the student has been deprived in that. Some of the people in this class, it would be up to a year of education. So it doesn't necessarily mean bad faith, right? It could be just that they lost a year of education, which is obviously substantial. So a couple of things about that. First, some students may have only lost a couple of weeks because under the interpretation of the district court, you get to age 22. Now, if a student turns 22, September 15th, they were deprived of two weeks of education, right? Whereas- No, that's true, that's true. So you're saying different lengths of time, but I'm just referring to the fact that it's not necessarily an issue of bad faith. With a gross procedural violation, it's the same thing. It doesn't necessarily have to be that it was done in bad faith, right? Yeah, I don't think it'd be bad faith, but to call it a gross violation when it's actually, I think when Connecticut asked this in 1980, it was actually thought to be at that time, the thinking was that you only had to provide to age 21. I know that this court and a couple others has now said that 21 inclusive means 22. But at the time in 1980, it was thought to be 21 at the maximum age. And Connecticut said, we don't wanna just exit students out on these different dates. We're gonna give them until the end of the school year in which they turn 21. And so I think that that is not a gross violation. It shows that Connecticut has for over 40 years taken a very wise approach to the best way to deal with students who have not been able to graduate and are aging out of the system. I will also say this, the original plaintiff DJ alleged in the complaint that he was a client of the Department of Developmental Services. And I also think a lot of these students  have also had services from the state of Connecticut. And while they're not services in their local public school, they are services. And I think that that again should be considered when determining whether the state has committed a gross violation. I really take issue with that characterization. All right, thank you for coming in. Thank you, your honor. All right, so we'll move to Mr. Kim for the appellee. All right, thank you, your honor. May it please the court. This is Jason Kim appearing on behalf of the plaintiff AR as well as the certified class. We are the appellees on this case. This is now the third time I've had the privilege of appearing before a federal appeals court on what is essentially the same issue, at least as to the merits of the IDEA challenge. So my presentation has three distinct components that sort of matches Mr. Cunningham's. One is briefly discussing the merits of the IDEA challenge. The second discussing whether compensatory education was an appropriate remedy. And the third turning to the subject matter jurisdictional issue. So I started by saying I've appeared before the Ninth Circuit and the First Circuit on this issue. I was fortunate enough to prevail. And those are the ERK and the KL cases. The ERK case from 2013 involving Hawaii, the KL case from 2018 involving the state of Rhode Island. These are the only two appellate cases that have addressed this issue. And the rule that comes out of both of those cases that applies fully here is that where a state provides secondary completion programs to adults, that is those between 21 and 22 for purposes of this case, then that state must also provide special education until the outer bound of the IDEA's age eligibility requirement, which is until the first day that the student turns 22. There was some confusion in the Second Circuit in I think the, starting from I wanna say the 80s on this point, I think that that has been adequately resolved by now. So we do know, and it's in the plain text of the statute, that it's supposed to be inclusive of age 21, which means the last day that the student turns 21. And as every court that's looked at this agrees, the operative language as the liability piece is in section 14.112. And the important language there is, the state should provide education up until the age of 22, unless this, and I quote, would be inconsistent with state law or practice. And I'll insert an ellipsis here, respecting the provision of public education to children in those age ranges. And again, as every court that's looked at this issue has found, the key issue then is what does that mean in that statute when we refer to public education? The Ninth Circuit derived a definition of public education by the definition of a free appropriate public education, the IDEA itself. The First Circuit took a slightly different approach, but they ended up in the same place. And that is that there are three elements here. One is that the education be provided at public expense. Second, that it be provided at public direction. And third, that, and this is, given the structure of the IDEA, this is an important gloss. Public education, I guess in theory, could include a state's community college or university system. But because we're in that IDEA context, that that is excluded. So public education in this context must involve preschool, elementary, or secondary education. So then the issue is what does Connecticut law and practice, and that's what section 14.1.2 asks us to look at, what does it say about providing public education to adults? And I think the key, this positive portion of Connecticut law on this point is Connecticut General Statute 10-69A. And this requires each and every LEA in the state of Connecticut to provide adult education of various forms. And importantly and specifically, that includes elementary and secondary school completion programs or classes. And so to the extent Connecticut now wants to draw a distinction between, for example, the GED program and secondary education, that's actually completely inconsistent with Connecticut law. If the GED program is not secondary education under Connecticut law, then essentially that means the LEAs are not complying with the law. And this particular law, I don't think anyone thinks that's the case. So as the court suggested, or one of the judges suggested in questioning Mr. Cunningham, there should be a uniform public standard as public education consists of for purposes of the IDEA. But even if you did look at state law, it's very significant that state law could not be clear that these GED and other programs are indeed secondary education under Connecticut law. And that also is consistent with plain understanding of what secondary education is, which is an education that enables one to obtain a high school diploma or its equivalent. And that's certainly the overall intent of the GED program. And there is evidence in the record, which I won't belabor and it's completely undisputed that Connecticut has three adult education programs intended to lead to a high school diploma or its equivalent. And these are publicly funded. They are free by statute. They're required to be free. They all lead to a high school diploma and they're all supervised by the state. So both as a matter of Connecticut law and Connecticut practice with respect to public education, it is clear that Connecticut provides public education to students older than 21. Thus it must also provide that education to under the IDA until students turn 22. And again, that's the conclusion of both in Ninth Circuit and the First Circuit. There's no contrary authority from any appellate court on this point. I'm turning to the compensatory education point. There is language in the Second Circuit's cases that is different, I think, than language in other circuits cases referencing a gross violation or gross procedural violation of the IDA. I think that concept, looking at the cases, appears to be somewhat under-theorized as to what exactly that means. But I think at a minimum, what we can say that it means looking at the cases, and that is the Burr case from 1988 and the Mista C case in 1990 is a gross violation of the IDA is one that leads to a complete exclusion or a complete deprivation of special education. Without that much regard to the specific circumstances that led to that result or the motivation of the state or local officials, there's really no discussion in Burr or Mista C about what the intent was or whether the government officials were acting in good or bad faith. We've never claimed that the state of Connecticut was intentionally violating the law or was trying to shirk its violations under the IDA. The point is that their law resulted in students being completely deprived of special education on average. I think just doing simple math, the average period of deprivation was 181 days, and that is significant. That's a little less than an entire year. So I don't think any of the precedent in the Second Circuit invites or certainly doesn't require some investigation into the state of mind of the state. I don't think any of those cases have applied the concepts from the body of law dealing with qualified immunity as to what the state of the law was at the time these decisions were made. I think it's simply a matter of if the state actors make a decision that results in a deprivation, a complete deprivation of special education, that that entitles those who are deprived to compensatory education. Again, keeping in mind, though, that that's not necessarily an absolute rule. Compensatory education is an equitable remedy. So there might be other factors the district court takes into account in shaping it. But in terms of the overall framing of the issue in the Second Circuit precedent, as we stated in our papers and as the district court agreed, I think you'd look at the effect of the IDEA violation and not the motivation. With respect to the Department of Education and the Chevron sort of issues, I don't believe the state of Connecticut has cited a case that says an agency's failure to act even over the course of years is probative of what the agency's view is on the application of a law within its ambit. Frankly, I don't- You have a minute left. Oh, thank you. So I don't know what the U.S. Department of Education thinks about this issue. These cases have been going on. They've never really participated one way or the other, but I think it would be a stretch to say that the Department of Education's inaction over all these years indicates that they agree with the state of Connecticut's position. Finally, with respect to standing, given that I only have a minute, I think I just really wanted to emphasize what standard the previous plaintiff was required to meet. And that is under the Lujan versus Defenders of Wildlife. You look at what stage litigation is in. So, you know, DJA was under a summary judgment standard. And we believe that both the evidence from the affidavit of his mother and of missellers as 30B6 deponent for Harvard established that there were numerous disputed issues of fact as to whether the high school diploma awarded to DJA complied with 34 CFR 300-102 sub A, defining a regular high school diploma. You know, we chose to replace DJA because if we really wanted to get to the, you know, the very bottom of that issue, it would ultimately be more complicated than the underlying IDEA issue. And we think the district court, you know, very properly allowed the amendment and allowed the challenge to subject matter jurisdiction to be mooted. So with that, I am happy to take any questions from the panel. Thank you very much, Mr. Kim. Judge Keirs, any questions for Mr. Kim? No questions here. Judge Bianco. Yes, thanks, Judge Cabranes. Mr. Kim, I just wanna focus on the gross violation issue. You mentioned this, but I just wanna emphasize it is an equitable remedy. So even though bad faith may not be required, it's certainly the intent of the state, certainly something we could consider under that standard, right? I think so to a limited extent. So, you know, as I've admitted, and as you also pointed out, it's an equitable remedy and equitable remedies, there's always an element of discretion. I think the district court, you know, has exercised that discretion in its opinion, essentially saying that compensatory education was an appropriate remedy. I don't believe that the state in this appeal, you know, I think they're making a different challenge, which is categorically compensatory education is not available. I don't understand them to be arguing that there are other discretionary factors that the district court should have considered but failed to. They're arguing that they didn't have the intent to violate the law. There's no bad faith here. They're arguing that it's not an issue of Chevron deference, but that DOE approved Connecticut's plan for years. And if this was a gross substantive violation of the IDEA, you would think that the Department of Education would have pointed that out, right? I understand the point. And I think the counterpoint to that is, you know, the intent of compensatory education is in no way to be punitive. It's just to restore the class members to what they would have received, you know, have the state complied with the IDEA. I think it's- Isn't there a practical issue on that? Because you could have, you know, the class goes back to 2015. So you could have, I guess, 26 year olds who would then get some number of weeks or months of compensatory education regarding a high school completion at age 26, right? That's certainly the case. And I think that's certainly something that the district court could consider in framing, you know, the appropriate parameters of compensatory education. There are certainly individuals who have left the state. There are individuals who have no interest, presumably, in re-engaging with the state's special education system. There are certainly resource constraints. There's only so many, you know, eligible special education educators available at any given point in time in Connecticut. So those kinds of considerations, I think the district court, you know, can take into account. You know, I don't think that there's an adequate record on those kinds of considerations for this court to provide any specific instruction to the district court in that regard. We have not really even begun to, you know, suggest how we would frame the compensatory education remedy. How many students are in this class going back to 2015? Sure, that is currently an issue of some dispute between us and the state. And after this argument, I think we're going to go to the magistrate judge to figure out what we want to do with that, about that. I think our view of it is it's something like four to 500. And the state's view is it's substantially smaller than that. All right. All right. Thank you, Mr. Ken. Sure. All right. Mr. Cunningham, you've reserved two minutes. Thank you, Your Honor. I would just like to address a couple of the points made. With respect to adult education in Connecticut, I just want to explain our position clearly. And that is that the only statewide program in Connecticut of adult education of this sort is the GED. And once again, the GED, we think it's important that under the regulations for the IDEA, the GED does not count for special education students as a regular diploma. And again, getting back to the purpose of the IDEA, we think it distorts the IDEA to say that because students or adults in Connecticut who are 21 can avail themselves of the GED, that then all special education students in the state of Connecticut that haven't graduated are entitled to special education services in Connecticut public schools until age 22. Also, I'd like to address the standing issue and just make clear to the court how this occurred. The complaint is originally filed, the plaintiff, D.J., alleged that he had not received his high school diploma. That turned out to be false. And we've learned about that through discovery. And that's why it was raised later as to standing. And the reason that we care, I think Judge Bianco has hit on this, is that there's a two-year look back under the IDEA for a statute of limitations. So the class goes back, actually, 2014. And just to be clear, Attorney Kim mentioned that we have a disagreement about the class. When he said four to 500, that's per year. Excuse me, you have a minute left. Thank you. We believe the number is more like 175 per year, but it's still a substantial number. And that's why we explain that we were prejudiced by allowing the complaint to be amended. First, obviously, under the circuit law, you can't amend a complaint if standing was lacking from the beginning. But also, it matters to us because it greatly expands the class. And if this court were to reverse and require a new complaint, the class would only go back two years. And continue with compensatory education. In addition to all the arguments that we made, if this court were to affirm the declaratory and injunctive relief, that would obviously affect students going forward. Our stay in this case was denied, both by the district court and this court. So students from last year, this decision was announced right at the end of the school year. So those students from last year were allowed to stay until age 22. So if the compensatory education part is reversed, all that it will mean is that Connecticut school districts will be adequately unnoticed that they'll have to provide services until age 22. Thank you. Thank you, Mr. Cunningham. Okay, sorry, your honor. I just had- No, it's all right. Okay. May I finish here? Okay. No. Okay. Thank you, your honor. Judge Kears. Any questions? No questions, thank you. Okay. Judge Bianco. No, thank you. All right. Thanks very much to you both. We'll reserve the decision.